# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ROBERT A. SIMMONS, Jr. and ) <br> REBECCA J. SIMMONS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WYNDHAM VACATION RESORTS, INC. ) <br> ) <br> Defendant. ) | No.: 3:20-cv-00029 <br><br> JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Come now the Plaintiffs Robert A. and Rebecca J. Simmons ("the Simmonses"), by and through counsel, and state for their amended complaint against Defendant Wyndham Vacation Resorts, Inc., as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Robert and Rebecca Simmons ("Mr. and Mrs. Simmons" or "the Simmonses") are citizens and residents of Benton, Polk County, Tennessee.

2. Defendant Wyndham Vacation Resorts, Inc. ("Wyndham") is a Delaware corporation with its principal place of business in Florida. It can be served process in Tennessee on its registered agent Corporation Creations Network, Inc., 205 Powell Place, Brentwood, TN 37027. The Defendant does business in Sevier County as "Wyndham Smoky Mountains."

3. This action is brought under the Tennessee Consumer Protection Act of 1977 ("TCPA"), T.C.A. § 47-18-101, *et seq.*, the Tennessee Timeshare Act of 1981 ("TTA"), T.C.A. § 66-32-101, *et seq.*, and Tennessee common law.

1

4. This Court has explicit subject matter jurisdiction and venue according to T.C.A. § 47-18-113(b), which states:

> [a]ny provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act of 1977 and related acts set forth in this title is void as a matter of public policy.

Under this statutory provision, a contractual forum selection clause "cannot defeat the ability of a Tennessee consumer to bring an action under the [Tennessee Consumer Protection Act] within the appropriate forum in this state." *Overton v. Westgate Resorts, Ltd., L.P.*, No. E2014-00303-COA-R3-CV, 2015 Tenn. App. LEXIS 45, at *35 (Ct. App. Jan. 30, 2015).

5. Furthermore, the Plaintiffs have a private right of action under the TCPA pursuant to T.C.A. § 47-18-109(a)(1) because the Plaintiffs suffered an ascertainable loss of money as a result of the use of deceptive acts under the TCPA.

6. Defendant regularly conducts and transacts business in Sevier County. Furthermore, the deceptive acts that gave rise to this action occurred in Sevier County. Finally, the parties executed the contract relevant to this action in Sevier County.

7. Any choice of law, choice of venue, or forum selection clause provisions are void as a matter of law under the Tennessee Consumer Protection Act, or in the alternative, are invalid because Defendant's agents fraudulent induced said contract's execution.

8. Defendant filed a Motion to Dismiss and Compel Arbitration on February 14, 2020. Plaintiffs file this Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), which permits amending as a matter of course 21-days after service of a motion under Rule 12(b).

2

## FACTUAL BASIS

9. In May 2017, Mr. and Mrs. Simmons stayed at the Wyndham property Compass Cove in Myrtle Beach, South Carolina. When they attempted to check into the hotel, the hotel staff informed them that they were *required* to attend a brief presentation to obtain their parking pass. The hotel staff member represented that their attendance was mandatory to use the hotel room that Simmonses already paid for. This was the first in a series of misrepresentations that led the Simmonses to this current action.

10. At this "90-minute presentation," which lasted six hours, the Simmonses were bombarded with high-pressure sales tactics, perk packages, point systems, and wowed with tours of immaculately curated rooms. Eventually, in the face of these aggressive tactics, they capitulated and purchased a timeshare.

11. The following spring, 2018, when the Simmonses attempted to use the timeshare paid for over the year, they were again told that they were *required* to attend a mandatory sales pitch to obtain their parking pass. Once again, this 90-minute presentation lasted six hours, and again, they were pressured into signing a new timeshare sale contract.

12. One year later, Spring 2019, the process repeated a third time—the Defendant's agent told the Simmonses they were *required* to attend a sales pitch. This time they refused, and continued to refuse, for the duration of their stay. On the final day of their vacation, a Wyndham employee came to their hotel room, claiming to offer them a gift. In addition to a "free gift," the employee made yet another sales pitch, this one supposedly 30-minutes, which lasted five hours. Cornered in their own hotel room, the Simmonses capitulated. This contract had a caveat: the Simmonses were required to use the credit card points they acquired over three years by September 2019, or those points would expire.

13. Faced with the choice of losing their points or attending another Wyndham hotel, Mr. and Mrs. Simmons booked a weekend stay at a Pigeon Forge Wyndham property for September 2019. Once again, the Simmonses faced a new sales pitch. This marathon session lasted seven hours, and the sales representative told the Simmonses that *this time* things were different. She told them their old contracts were a bad deal, designed to lock them into payments forever. She told them that this asset was something the Simmonses could pass on to their children. She told them they were in the "Gold Level" and could pay their maintenance fees with credit card points. She explicitly told them there would be no down payment. In the face of this grueling marathon of a high-pressure session, they capitulated yet again. This new contract signed in Pigeon Forge in August 2019 forms the basis of this lawsuit and is attached as **EXHIBIT A**.

14. As discussed above, the Wyndham representative made several material representations to the Simmonses regarding this new contract. The strangest is that the Simmonses were to sign the contract on video and instructed them on several key phrases that they *could not say on camera*; no doubt, in case a lawsuit was ever filed based on this contract. The most egregious, and material as it went to a contract term, was that the Defendant would waive the down payment as a perk to the Simmonses if they signed that day. The Defendant's agent made the oral statement that the contract did not include a down payment while the agent rushed the Simmonses through a 77-page sale contract for a $156,000 timeshare. They had no opportunity to review such a dense and lengthy contract, nor did they have the opportunity to consult legal counsel. The statement that there was to be no down payment is egregious because there was a down payment—a significant one: $32,219.49. This down payment was distributed between two lines of credit: a $25.00 line and $5,694.49 line, and two credit card charges:

4

$14,500.00 and $12,000.00. Defendant conveniently opened these credit cards on the spot for the Simmonses and immediately processed the charges.

15. At all relevant times, Defendant's employees were acting as agents of the Defendant. Their actions are attributable to the Defendant because they were performed within the scope of their employment.

16. The contemporaneous oral statement that there was to be no down payment was a material representation of fact regarding a term of the contract. That statement was false when the Defendant's agent made it. The statement's purpose was to induce the Simmonses to purchase a timeshare. Therefore, the use of such deceptive practices constitutes a violation of the Tennessee Consumer Protection Act, the Tennessee Timeshare Act, and common law fraud in the inducement.

## **CAUSES OF ACTION**

### **The Tennessee Consumer Protection Act**

17. Plaintiffs incorporate by reference paragraphs 1 through 16 above.

18. Defendant is a company that sells timeshare interests and related services to the general public, thus satisfies the TCPA's definition of a business. Mr. and Mrs. Simmons are consumers within the meaning of the TCPA.

19. Defendant fraudulently induced the Simmonses to execute a contract based on a series is misrepresentations of material fact in the context of multiple high-pressure sales pitches.

20. Particularly, the Defendant's agents mislead the Simmonses by making contemporaneous oral statements that there was no down payment, despite the written contract claiming a down payment of $32,219.49. This down payment was obscured by structuring it into

5

two new credit cards opened in Mr. and Mrs. Simmons' names, respectively, and immediately charging $12,000.00 and $14,500.00, and two lines of credit for $5,694.49 and $25.00. *See* Ex. A at 1.

21. After a multi-hour high-pressure sales pitch, the Defendant's agent then rushed the Simmons through a 77-page sale contract for the purchase of a $156,600 timeshare in several minutes. The Defendant did not afford the Simmonses the time to read the contract nor to consult legal counsel.

22. The combination of a high-pressure sales pitch, dense legal contract, and oral misrepresentations constitute obtaining the Simmons' agreement by deception, a violation of the TCPA, T.C.A. § 47-18-104(b)(22).

23. Furthermore, Defendant's agents claimed the Simmonses were purchasing the large, luxurious rooms shown on their tour. That claim was false, and known to be by the Defendant's agents, when they made it. Instead, the Simmonses truly contracted for smaller studios rooms.

24. The misrepresentation of the quality, size, and usability of the subject matter of a contract, in this case a timeshare, is a violation of TCPA, T.C.A. § 47-18-104(b)(21).

25. Therefore, these representations were *per se* violations of the TCPA, specifically T.C.A. §§ 47-18-104(b)(21) and -(22).

**The Tennessee Timeshare Act**

26. Plaintiffs incorporate by reference paragraphs 1 through 25 above.

27. The Tennessee Time Share Act, T.C.A. § 66-32-101, *et seq.*, regulates timeshare sellers and applies to the conduct described herein.

28. T.C.A. § 66-32-121(f)(2) makes it a violation for the Defendant to engage in any of the following practices:

> (A) Engaged in or is engaging in any unlawful act or practice;
> (B) Disseminated or caused to be disseminated orally, or in writing, any false or misleading promotional materials in connection with a time-share program;
> . . .
> (F) Makes any willful or negligent misrepresentation, or any willful or negligent omission of material fact about any time-share or time-share project, or exchange program;
> (G) Makes any false promises of a character likely to influence, persuade or induce;
> (H) Engages in any other conduct which constitutes improper, fraudulent or dishonest dealing; or

29. Furthermore, T.C.A. § 66-32-132(11) makes it a violation to "[m]ake any misleading or deceptive representation with respect to the contents of the time-share program, *the purchase contract*, the purchaser's rights, privileges, benefits or *obligations under the purchase contract*." (emphasis added).

30. To wit, the Defendant's agent explicitly told the Simmonses they were not required to make a down payment. The agent then rushed the Simmonses through a 77-page sale contract filled with numerous terms and legalese in a matter of minutes. Mr. and Mrs. Simmons had no time to review the document thoroughly or consult legal counsel. In fact, the Defendant's agent intentionally placed them in a high-pressure sales situation to induce the Simmonses to sign the contract without review.

31. The combination of a high-pressure sales pitch, dense contract, and oral misrepresentations constituted a violation of T.C.A. §§ 66-32-121(f)(2) and -132(11) as a willful misrepresentation of material fact; in the alternative, at a minimum it is a grossly negligent misrepresentation, which is likewise a violation.

32. Therefore, Defendant violated the Tennessee Timeshare Act by misrepresenting the down payment provision in the sale contract.

7

**Common Law Fraud**

33. Plaintiffs incorporate by reference paragraphs 1 through 32 above.

34. In Tennessee, regarding fraud, "a person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

35. Defendant induced the Simmonses into attending a series of high-pressure sales pitches by requiring their attendance in exchange for admission into the hotel and to receive their parking permits.

36. At these multi-hour sales pitches, the Defendant made material misrepresentations to Mr. and Mrs. Simmons, specifically that the Defendant would not require a down payment on the purchase of a timeshare.

37. Defendant's agents knew, or should have known, that the Simmonses would be charged a down payment. To wit, the Defendant's agents rushed the Simmonses through a contract which lists a down payment of $36,673.03, structured over two credit card charges of $14,500, and $12,000, and two lines of credit of $5,694.49 and $25.00. *See* Ex. A at 1.

38. The Simmonses reasonably relied on the representation that there was "no down payment" when they agreed to the new contract. Defendant's blatantly disregarded the truth when it represented that the Simmonses would not pay a down payment. This blatant disregard for the truth constituted fraud in the inducement.

39. Furthermore, these representations specifically induced the Simmonses to enter into the "Dispute Resolution/Arbitration" agreement at paragraph H of the Contract. At no time

8

did the Simmonses intentionally, voluntarily, or knowingly waive their right to a jury trial, to engage in arbitration, or alternative dispute resolution in any form. As with the contract as a whole, any agreement to engage in arbitration was the product of fraud perpetrated by Defendant's agents.

40. Defendant's employee's misrepresentations were intentionally made to induce the Simmonses to enter a contract, complete a sale, and pay the purchase price. Defendant's agent's work on commission, which is dependent on the sale of timeshare interests to individuals like Simmonses. In the alternative, if Defendant's agent's misrepresentations were not intentional, they were grossly negligent because this employee knew, or should have known, the truth regarding the contract's down payment provision.

**PRAYER FOR RELIEF**

Based on the foregoing, Plaintiffs Robert A. and Rebecca J. Simmons, respectfully pray for the following relief:

1. A judgment that the Defendant fraudulently induced the Plaintiffs entering into the contract;

2. A judgment that the Defendant willfully violated the Tennessee Timeshare Act of 1981;

3. A judgment that the Defendant's conduct was unfair and deceptive within the meaning of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-104(b)(27);

4. Because this action arises under the TCPA, specifically T.C.A. § 47-18-109(a)(1), the Plaintiffs respectfully request the Clerk of the Court mail a copy of this amended complaint to the Division of Consumer Affairs in the Department of Commerce and Insurance according to T.C.A. § 47-18-109(f)(1);

5. The contract be declared void as a result of that fraudulent inducement;

6. In the alternative, that the contract be rescinded as the product of fraud according to Tennessee common law. *See Lorentz v. Deardan*, 834 S.W.2d 316, 319 (Tenn. Ct. App. 1992);

7. Plaintiffs be released from any and all contractual obligations with the Defendant, including any subsidiary, child company, or affiliate thereof;

8. The interest in any timeshare property that the Simmonses can claim be returned to the Defendant;

9. Any and all debts, charges, obligations, interest, and fees stemming from this matter be rescinded and/or refunded, including, but not limited to, the down payment of $32,219.49, structured as two lines of credit of $5,694.49 and $25.00, and two credit card charges of $14,500 and $12,000;

10. A jury be empaneled as trier of fact;

11. The return of any and all funds actually paid to the Defendant by the Plaintiffs;

12. Treble damages pursuant T.C.A. § 47-18-109(a)(3);

13. Plaintiffs' attorneys' fees pursuant to T.C.A. § § 47-18-109(e)(1);

14. That the costs of this action be taxed against the Defendant; and,

15. For such further relief to which the Plaintiffs may be entitled.

RESPECTFULLY SUBMITTED,

*s/Alexander J. Cramer*
JESSE D. NELSON (BPR # 025602)
ALEXANDER J. CRAMER (BPR # 037697)
NELSON LAW GROUP, PLLC
*Attorneys for Plaintiffs*
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com
alex@NLGattorneys.com

CERTIFICATE OF SERVICE

I certify that this pleading or document was served via the Court's ECF Filing System on all users authorized and directed to receive such service, this 28th day of February, 2020.

                                                    *s/Alexander J. Cramer*